C. CONRAD CLAUS, ESQ.
State Bar Number 6601
816 E. Ogden Avenue
Las Vegas, Nevada 89101
702-384-4927 Fax 385-4927
Conrad@lawiswar.com
Attorney for Plaintiff

# IN THE UNITED STATES DISTRICT COURT

## DISTRICT   OF NEVADA

| | |
|---|---|
| DARYAL TAYLOR,<br>        Plaintiff,<br>            vs.<br>TOWN OF PAHRUMP, an Unincorporated<br>Political Subdivision of the State of Nevada,<br>NYE COUNTY SHERIFF'S<br>DEPARTMENT, a political subdivision of<br>Nye County, State of Nevada, NYE<br>COUNTY, a Political Subdivision of the State<br>of Nevada, DAVID BORUCHOWITZ,<br>individually and in his capacity as Detective<br>with the Nye County Sheriff's Office,<br>ANTHONY DE MEO, individually and in his<br>official capacity as Sheriff Nye County,<br>Assistant Sheriff RICK MARSHALL,<br>Investigator MARY HUGGINS, individually<br>and in her capacity as Investigator Nye<br>County Sheriff's Office, Sergeant Travis<br>Huggins, individually and his capacity as<br>Sergeant, NCSO,  Ltnt. ED HOWARD,<br>individually and in his capacity as a<br>Lieutenant  Nye County Sheriff's Office,<br>Officer McNeil, individually and in her<br>capacity as Officer Nye County Sheriff's<br>Department. NYE COUNTY DISTRICT<br>ATTORNEY'S OFFFICE, a political<br>subdivision of the State of Nevada, KIRK<br>VITTO, Esq., individually and in his official<br>capacity as Assistant District Attorney, Nye<br>County Nevada, ROBERT BECKETT,<br>individually and in his official capacity as<br>District Attorney, POLICE OFFICER DOES<br>1-100, JOHN DOES 1 through 100, inclusive;<br>and ROE CORPORATIONS 1 through 100,<br>Defendants. | CASE NO.<br><br><br>**PLAINTIFF'S ORIGINAL COMPLAINT<br>FOR DAMAGES, AND DEMAND FOR<br>JURY TRIAL** |

**JURISDICTION AND VENUE**

1.   This is a civil rights action for wrongful, malicious prosecution, abuse of process, false arrest, perjury, and other causes of action brought by Plaintiff, an African-American former Nye County law enforcement officer, against the above named defendants pursuant to 42 U.S.C. §§ 1983, and the Fourth, Fifth and Fourteenth Amendments of the United States Constitution. Jurisdiction is founded on 29 U.S.C. §§1331 and 1343(1), (2), (3) and (4), and the aforementioned statutory and Constitutional provisions. Plaintiffs further invoke the supplemental   jurisdiction of this Court pursuant to 28 USC § 1367 to hear and decide claims arising under state law.

2.   Venue in this District is proper because all facts pleaded herein and all acts and omissions giving rise to this complaint occurred within the District of Nevada.

**PARTIES**

3.   Plaintiff, DARYAL TAYLOR, is a former Nye County, Nevada peace officer who was wrongfully and maliciously arrested and wrongfully prosecuted, said wrongful conduct forming the basis of this cause of action.  He brings this action individually and is in all ways entitled to bring this action under NRS 41.032 and federal civil rights laws. Mr Taylor is, and was at all times relevant herein, a resident of Clark County, Southern District of Nevada. Further, Plaintiff was wrongfully terminated by virtue of a forced resignation during the pendency of the underlying bogus criminal action, and denied the opportunity to vest him pension with accrued attendance.

//

4.     At all times relevant herein, Defendant   NYE COUNTY SHERIFF'S OFFICE (NCSO) was, and remains, a political subdivision of Nye County and the State of Nevada. NCSO is a law enforcement agency entrusted to provide thorough and accurate investigation, reporting, and police protection throughout   Nevada.  At all times relevant herein, NCSO employs or employed the other Defendants, in this action.

5.     At all times relevant herein, Defendant, ANTHONY DE MEO, was elected Sheriff of NCSO and was acting within the course and scope of his employment. As Sheriff, he is a policy-making official and is responsible for NCSO with power to make official and final policy for NCSO. He is sued in his individual as well as in his official capacity.

6.     At all times relevant herein, Defendant RICK MARSHALL, was an Assistant Sheriff with NCSO, and in his capacity was the head of Internal Affairs division of NCSO, with the power to make policy decisions and final policies and decisions for NCSO. He is sued in his individual as well as in his official capacity. Defendant Marshall, acting with oppression, malice, and with discriminatory intent, willfully and knowingly forced the Plaintiff to resign one month prior to his becoming vested, even though the Plaintiff had more than sufficient accrued pay to allow Plaintiff to be vested.

7.     At all times relevant, DETECTIVE DAVID BORUCHOWITZ was and is employed with NCSO as an Investigator and was acting within the course and scope of his employment during the entirety of the events that lay a basis for this Complaint. He is sued in his individual and in his official capacity.

8.     At all times relevant, INVESTIGATOR MARY HIGGINS, was employed with NCSO as an Investigator and was acting within the course and scope of her

employment with NCSO. She reports directly to codefendant Rick Marshall.  She is being sued in her individual as well as in her official capacity.

9.       At all times relevant, LTNT. ED HOWARD was employed with NCSO as an Investigator and was acting within the course and scope of his employment with NCSO. He is being sued in his individual as well as in his official capacity.

10.       At all times relevant, KIRK VITTO, ESQ., is a prosecutor who was assigned to prosecute this case, particularly when he conducted a preliminary hearing in this case in which he knowingly and/or with reckless disregard for the truth sponsored perjured testimony to taint the probable cause process, in violation of the Plaintiff's civil rights.  He is sued in his individual capacity and in his official capacity.

11.       At all times relevant, ROBERT BECKETT, ESQ., was the elected District Attorney of Nye County, Nevada, who is a policy-making official and is entrusted with the power and authority to make final decisions regarding the prosecution of citizens accused of criminal conduct, having regard to his duties to seek justice, free from violating a defendant's civil rights. He is sued in his individual capacity and in his official capacity.

12.       At all times relevant herein, and in all actions described herein, co-Defendants Sheriff  De Meo the named and DOE OFFICERS were acting under color of law and under color of authority as officers of NCSO, and are being sued in their individual and in their official capacity.

13.       The true names and capacities, whether individual, corporate, associate, partnership or otherwise were the agents of one another of Defendants herein designated as POLICE OFFICER DOES 1-100 (inclusive), JOHN DOES 1-100 (inclusive), and ROE CORPORATIONS 1 through 100 (inclusive) are unknown to Plaintiff, who, therefore sues

said Defendants by such fictitious names. Plaintiff alleges that each named defendant and each defendant designated as OFFICERS DOES, JOHN DOES, and ROE CORPORATIONS  negligently, willfully, maliciously, contractually, vicariously, or otherwise legally responsible for the events and happenings herein referred to and likewise proximately caused injury and damages to Plaintiff reserves the right to ask leave of this Court to insert the true names and capacities of such Defendants when the same have been ascertained, and will further ask leave to join said Defendants in these proceedings.

14.     That the named Defendants, as well as DOES 11-20 are supervisory and/or policy making officials of NCSO and/or the NYE COUNTY DISTRICT ATTORNEY'S OFFICE as yet unidentified who have adopted, implemented, maintained or tolerated polices which permitted, facilitated or allowed the violation of Plaintiff's civil rights and/or who have negligently trained, hired, or supervised officers, agents or employees of the County of Nye. Plaintiff will ask leave of this Court to insert the true names and capacities of such Defendants when the same have been ascertained and will further ask leave to join said Defendants in these proceedings.

15.     That at all times relevant to this complaint, all of the actions of Defendants, and each of them, were performed under color of State law and pursuant to their authority as County of Nye employees and/or agents or otherwise.

16.     That at all times pertinent hereto the Defendants, and each of them, were the agents, servants, employers and/or employees of each other and were acting within the course and scope of their relationship.

17.     That the Defendants, known and unknown, were all acting under color of law during the entire process against the Plaintiff, and violated his civil rights by acts and

conduct including but not limited to filing bogus charges, giving and sponsoring perjury, tainting the probable cause process, pressuring the prosecutors to bring charges, investigating this case in such a knowingly patently deficient manner so contrary to established investigative policies that the Plaintiff, a four year eleven month peace officer, was denied any semblance of Due Process, engaging in wrongful termination, all to his damages well in excess of the jurisdictional minimums of this court. The Defendants knew, or should have known, of Mr. Taylor's absolute innocence at the very beginning of this process, commencing with an investigation lacking in Due Process, an arrest made maliciously and without probable cause, a bindover based upon tainted probable cause, continuing with the exculpatory DNA testing that WAS done and failure to dismiss charges knowing or having reason to know of the defendant's innocence, continued prosecution in violation of his civil rights by among other things undue pressure exerted by NCSO and its agents and employees and culminating in a jury trial where Defendant Boruchowitz willfully, knowingly, and with intent to violate the Plaintiff's civil rights, committed perjury, attempted to withhold material impeachment and exculpatory evidence, and said proceedings terminating in his favor on **November 29, 2011**, after a jury of Mr. Taylor's peers acquitted him in less than 30 minutes. Thus, this action is timely filed. Said conduct permeated the entirety of this case, in violation of the Plaintiff's civil rights.

18.     That plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned each defendant aided, abetted, condoned, permitted, willfully ignored, approved, authorized and/or ratified the unlawful acts hereinafter described, all in violation of the Plaintiff's civil rights.

19.     That this is corroborated by Defendant Boruchowitz's own testimony that his "job" was NOT to prove the Plaintiff innocent, but to prove the Plaintiff (Mr. Taylor) guilty.

20.     That as a proximate result of defendants' deprivation of federal and state civil rights, plaintiff has suffered, continues to suffer and will suffer general and special damages and is entitled to exemplary and punitive damages and attorney fees.

## ALLEGATIONS COMMON  TO ALL CLAIMS.

21.     That on March 26, 2008, the Plaintiff, acting in the scope and course of his duties as a peace officer for NCSO, transported a prisoner, Shannon Knight, to Advanced Urgent Care, located in Pahrump, Nevada, for a medical visit.

22.     That Shannon Knight had previously brought sexual-related charges against an individual, and as a result, was able to obtain a monetary settlement. This fact was known, or should have been known, to the Defendants, since the suspect was prosecuted in Nye County, convicted, and sent to prison.  Thus, it was known that the complaint would have the knowledge to articulate sexually-related charges against individuals, whether true or false.

23.     That Ms. Knight, during the relevant time frame, was in custody on serious drug trafficking charges, and it was not only reasonably foreseeable, but also known, that she would attempt to enrich herself as well as attempt to reduce her eventual sentence.

//

//

//

She is currently on parole, and the trial of the Plaintiff was delayed long enough for her to serve her sentence and be released from confinement, all to the prejudice of the Plaintiff, who had to languish under the cloud of this false allegation until his quick acquittal on **November 29, 2011**.

24.     That Ms. Knight, the complainant, had the type of criminal background that, from an objective and subjective standpoint, would cause a reasonable person to question her credibility and her motives, whereas Mr. Taylor was a veteran police officer close to five years vesting.

25.     That the Plaintiff is an African-American, and his ethnicity was often the topic of ridicule by members of NCSO.

26.     That prior to the Plaintiff's  transporting Ms. Knight back to the detention facility, personnel at Advanced Urgent Care explained that she had serious medical issues, and needed to be tested for various diseases and other illnesses, including but not limited to herpes, syphilis, HIV, gonorrhea, and other diseases, since she was a methamphetamine addict.  This fact was told to the Defendant Boruchowitz when he interviewed the Plaintiff, and provides a compelling motive for the Plaintiff NOT to engage in any sexual contact with Ms. Knight.

27.     That this fact was explained to Defendant  BORUCHOWITZ by the Plaintiff, when he was initially questioned about the incident on or about March 26, 2008.

28.     That throughout the transport, the Plaintiff engaged in conversation with her along the route, personal, but in all ways legal.

/ /

/ /

29.     That the Plaintiff took the most direct route back to the detention center, pursuant to his duties.   This fact was known to the defendants, or through the exercise of reasonable diligence, should have been known.

30.     That after Ms. Knight arrived at the detention center, she arranged an interview with members of the NCSO, wherein she claimed that the Plaintiff had engaged in felonious behavior with her, claiming that he committed acts of digital penetration on her person.

31.     That after Ms. Knight reported the alleged sexual assault, she was in a physical state where evidence was ripe for DNA gathering, in accordance with established investigative policies of the NCSO and practically all law enforcement agencies.  This evidence would have conclusively rebutted the fantasy and false   allegations that Ms. Knight was manufacturing.

32.     That a rape kit test was not utilized, and thus no DNA was collected from her private areas; the failure to collect DNA from her person was in willful, malicious, and deliberate violation of established, reasonable investigative police procedures, part and parcel of the wholesale violation of the civil rights of the Plaintiff to a Due Process right to a fair investigation; a fair investigation consistent with established policies would have included DNA testing performed with a rape test kit in accordance and pursuant to well established policies and procedures.

33.     That during the interview process of Ms. Knight with Detective Huggins, Ms. Knight also brought up   that she wanted to cooperate with the DEA to help her personal situation, and that she wanted a personal meeting with her fiancé, who was likewise, incarcerated, even asking for makeup. Thus, it was clear that Ms. Knight was not

performing a public service, but was interested in helping her custodial situation any way she could.

34.     That prior to the transport, she had also called Kirk Vitto, Esq., in an effort to try to snitch her way into some favorable treatment, who rejected her requests to be a reliable credible witness.

35.     Thus, agents of law enforcement, including Mr. Vitto, Esq., assistant district attorney, made it clear that they did not want to utilize her as an informant, because she was not credible.

36.     The totality of the circumstances of Ms. Knight makes the failure to provide a reasonably fair investigation, in violation of the Plaintiff's civil and constitutional right.   This failure to conduct a reasonable investigation is particularly compelling, since the Defendant Boruchowitz, during the interview of complainant Knight, told her that he would be conducted a swab of her private area, and wilfully and maliciously failed to utilize the rape test kit to conduct a swab of the area where she falsely stated the Plaintiff penetrated.

37.     That after this incident was reported to Detective Boruchowitz, the Plaintiff immediately, at approximately midnight, in violation of his Garrity rights (*Garrity v. State of N.J.*  385 U.S. 493, 87 S.Ct. 616 (U.S.N.J. 1967)), drove to the NCSO, pursuant to the directive of Defendant Boruchowitz, to be interrogated by Defendant Boruchowitz

38.     That the Plaintiff arrived at Defendant Boruchowitz's office, and fully cooperated with Defendant Boruchowitz in the investigation of this wrongfully initiated case.

39.     That the Plaintiff was never right any admonitions of any kind, in violation of his civil rights under the *Garrity* case.

40.     That the Plaintiff was truthful, consistent, and unequivocally denied committing any acts of sexual conduct on the complaint/drug trafficking suspect, Ms. Knight.

41.     That during this interview, Plaintiff literally pleaded for full DNA testing.

42.     That the Plaintiff explained to Defendant Boruchowitz that upon transfer of Ms. Knight back to the detention center, the medical staff told Plaintiff that Ms. Knight would have to be tested for many diseases, among those, AIDS, hepatitis C, gonorrhea, syphilis, and other serious communicable diseases.

43.     That it was clearly known to a reasonably objective investigator that anyone, much less, the Plaintiff would never subject himself to acquiring these communicable diseases by inserting his hands into the vaginal areas of someone with the potential to have this litany of communicable diseases such as Ms. Knight.

44.     That this fact is highly corroborative of there being no probable cause to charge and/or arrest the plaintiff.

45.     That Defendant Boruchowitz  interviewed the complainant, and was aware of the Plaintiff's steadfast denials and his pleas for DNA testing.

46.     That Defendant Boruchowitz affirmatively told Ms. Knight that he would see her in the morning to conduct a swab of her, consistent with established investigative policies of the Defendant NCSO in sexual assault investigations.

47.     That after Defendant Boruchowitz interview the Plaintiff, he, Ltnt. Howard, and other members of NCSO charged with decision making authority made the conscious,

willful, and deliberate choice NOT to utilize the rape test kit to conduct a vaginal swab of Ms. Knight.

48.     That the course of the investigation .Defendant Boruchowitz was told by Ms. Knight that the Plaintiff's car, during the transport, came to a stop in front of Irene's Casino, which prompted Defendant Boruchowitz, in his official capacity, to travel to Irene's Casino, where he obtained a video, which showed the Plaintiff's vehicle, on the time and date in question, not stopping, not slowing down, rather, the car passed Irene's at a normal and consistent rate of speed.

49.     That upon viewing the video, it was apparent that Ms. Knight was lying; the Plaintiff's vehicle did not slow down, much less stop, as falsely represented by Ms. Knight.

50.     That Defendant Boruchowitz knew she was not truthful in her account of the events.

51.     That Defendant Boruchowitz knew that she had brought sexual assault charges before.

52.     That Detective Boruchowitz knew of her serious criminal record, the pending charges, and the probability that she would go to prison.

53.     That Detective Boruchowitz knew that she wanted to inform on people in order to help her current legal situation.

54.     That Detective Boruchowitz, Defendant Ltnt. Howard, and other supervisory personnel at NCSO were so concerned about the plausibility of Ms. Knight's story, that the defendants Boruchowitz, Howard, and other NCSO personnel, all acting

//

within their scope and duties, reversed course, and reneged on Boruchowitz's his statement to Ms. Knight that he would come back to do a "swab" or her person.

55.     That Defendant Boruchowitz also reached out to members of the community and could not find any person who would tell him that she was of truthful character; in truth and fact, members of the community told Defendant Boruchowitz that she could not be believed.

56.     That the Defendants knew that Ms. Knight's credibility was next to nil, and that there would be a heightened need for corroborative testing, at a minimum, the utilization of established investigative procedures and policies of the NCSO by use of a rape test kit.

57.     That said reasons for knowing that there was not probable cause to bring these charges include but are not limited to her falsely stating that during the trip back to the detention facility with Plaintiff that his car slowed down and/stopped in front of Irene's casino (causing Detective Boruchowitz to attempt to conceal this false statement to the jury as well as to misrepresent this materially false statement during critical phases of this case), verifying her bad character for truthfulness by members of the community, her substantial criminal record and the attendant virtual certainty of doing prison time,  the Plaintiff's unequivocal and logical denials of Ms. Knight's  ludicrous allegations, Ms. Knight's  unusually strong motive for bringing false charges, and the Plaintiff's communication to Detective Boruchowitz that he was admonished by medical staff that Ms. Knight needed to be tested for a potpourri of communicable and infectious diseases.

58.     That Defendant Boruchowitz and other members of NCSO did not possess knowledge or reasonably trustworthy information sufficient to warrant a person of

reasonable caution in the belief that an offense had been committed by the Plaintiff, and that there was not probable cause to charge Mr. Taylor, Plaintiff.

59.     That after the Plaintiff underwent his interview of the plaintiff, Defendant Boruchowitz was then contacted by a representative of the Plaintiff, and instructed that the Plaintiff was invoking his right to counsel, and that he was NOT to contact the Plaintiff.

60.     That despite this clear instruction, the Defendant Boruchowitz, in violation of the Plaintiff's *Garrity, Miranda*, and other constitutional and civil rights, called the Plaintiff and falsely represented to Plaintiff that he (Boruchowitz) had observed the Defendant's car stopping in front of Irene's Casino.

61.     In truth and in fact, Defendant Boruchowitz full well knew that the Plaintiff's vehicle did not slow down, but was fishing for any information to support Ms. Knight's ridiculous allegations against the Plaintiff.  He came up short.

62.     That the decision made by the Defendants Boruchowitz and/or Defendant Howard, and/or supervisory personnel at the NCSO, known and unknown, NOT to conduct a swab of the complainant, Shannon Knight was done maliciously, wilfully, and with intent to violate the civil rights of the Plaintiff by depriving him of a fair investigation.

63.     That the deliberate refusal of the Defendants to appropriately conduct a DNA test of Ms. Knight's private areas was a violation of established policy and procedures of the Defendant NCSO.

64.     That the defendants' deliberate refusal to administer a DNA tests of the complainant's private area was part and parcel of this sinister and egregious violation of the Plaintiff's rights to a fair investigation, in violation of his civil rights.

65.     That this conduct is a violation of clearly established investigative policies and procedures of virtually every law enforcement agency, including NCSO.

66.     That the Plaintiff was entitled to a reasonable and fair investigation, which includes but is not limited to sexual assault investigations being conducted according to standard established policies and procedures.

67.     That this failure is one of the factors that demonstrate the Defendants' violation of the Plaintiff's civil rights.

68.     That although minimal DNA testing was done on Ms. Knight, the most critical testing of her private area was not performed; this investigative failure was reckless, willful, against policy, all part and parcel of the serial violation of the Plaintiff's civil rights.

69.     That the Defendants deprived the plaintiff reasonable and fair investigation as guaranteed him by the 4th, 5th, 6th, and 14th Amendments to the United States Constitution, and the Plaintiff is entitled to substantial actual and exemplary damages.

70.     That Detective/Defendant Boruchowitz has a propensity to wrongfully accuse law enforcement and firefighter of sexual-related crimes, having wrongfully charged William Tidmarsh, and firefighter Allan Bigelow.

71.     That as a manifestation of this common, unlawful, and unconstitutionally biased scheme, the Plaintiff was wrongfully, maliciously, and oppressively arrested and charged with Kidnapping, Official Oppression, and Sexual Assault, all charges.

72.     That defendant Boruchowitz further tainted the probable cause process when he falsely stated in the arrest affidavit and at the preliminary hearing that the plaintiff's car "appeared to slow down" in front of Irene's Casino, said statement being

false, and made in further of and with the deliberate intent to oppress and violate the Plaintiff's civil rights.

73.    That Defendant Boruchowitz made a material omissions in obtaining a high and unconstitutionally oppressive bail against the Plaintiff, including but not limited to failing to inform the magistrate that Ms. Knight had lied about the vehicle slowing down or stopping in front of Irene's Casino; that any reasonable and trained police officer would know that this was the kind of information the judge would like to know, prior to issuing an arrest warrant and prior to the setting of bail.

74.    That as a result, the Defendant was forced to pay an excessive bail, and was forced to stand trial, in violation of his civil rights.

75.    That it was known to the Defendants that probable cause did not exist to arrest and charge the Plaintiff, even without the false statements that the Defendant made regarding the Plaintiff's vehicle appearing to slow down in front of Irene's Casino.

76.    That the Defendant Boruchowitz was in direct possession of material impeachment evidence, namely, the video tape, which directly contradicted both Ms. Knight's testimony and Defendant Boruchowitz's testimony, and such withholding of this evidence was in violation of the Plaintiff's civil rights under the 4th, 5th, 6th, and 14th Amendment rights, and further tainted   any probable cause finding at both the arrest process, and the preliminary hearing process.

77.    That the fact that Defendant Boruchowitz made false representations in official proceedings and withheld material favorable impeachment evidence further demonstrates that he KNEW that probable cause to arrest Mr. Taylor did not exist.

//

78.     That with no corroborating evidence, with evidence that rebutted Shannon Knight's story, with objective reasons for doubting her credibility, the Defendants, most notably Defendant Boruchowitz wrongfully arrested the Plaintiff.

79.     That Defendant Boruchowitz acted with further malice and oppression by falsely claiming in an official proceeding, the procuring of the arrest warrant, testifying falsely during the preliminary hearing, and testifying falsely in the trial, in order to paint a false picture of corroboration, with the express intent of causing an unreasonably and unconstitutionally excessive bail on Mr. Taylor, a bail of $108,000, of which Mr. Taylor had to put up $17,000 of nonrefundable currency, and with intent to harm the Plaintiff at the probable cause level and at the trial level, all in violation of his civil rights.

80.     That despite having no physical corroborating evidence, despite knowing that Ms. Knight was not credible, despite knowing that physical evidence of the video tape contradicted  her statement, despite members of the community informing Defendant Boruchowitz that she was not trustworthy, that despite law enforcement NOT wanting to utilize her in any way as a reliable informant, that despite the Plaintiff's prompt and adamant denials of the accusations, that despite NO DNA test results, that despite violations of clearly established investigative policies and procedures,  the Defendant Boruchowitz and others, all acting within the scope and duties of their employ, wrongfully, recklessly, with malice and oppressiveness, had the Plaintiff arrested and wrongfully exerted pressure on the District Attorney's office in order to maintain the charges,  most probably for fear of being sued for substantial damages.

81.     That the case against Mr. Taylor was so nonexistent that early on Mr. Taylor was offered as a plea bargain a simple misdemeanor.

82.    That the defendant Boruchowitz thus fabricated evidence by falsely stating and falsely testifying at the preliminary hearing and at the trial that the plaintiff's vehicle "appeared to slow down" by Irene's casino, in an effort to frame the plaintiff, in violation of the Plaintiff's civil rights under the 4th, 5th, 6th, and 14th Amendment rights.

83.    That the defendant Boruchowitz, as part of his scheme to frame the plaintiff, falsely testified at the plaintiff's criminal trial on November 29, 2011 that he could not get the video tape to play in front of the jury; when the court called him on his lie and ordered the defendant Boruchowitz to do whatever it takes to get the tape to play in front of the jury, jurors literally threw up their hands in disgust with the obvious perjury-laden trial, acquitting the plaintiff in less than 30 minutes.

84.    That the defendant Boruchowitz  further violated the plaintiff's civil rights under the 4th, 5th, 6th, and 14th Amendment rights by willfully attempting to conceal the exculpatory video tape from the jury's view.

85.    That the defendants violated the Plaintiff's civil rights by withholding materially impeaching "Brady" evidence at critical times during the process, at times where the defendants have a statutory and a constitutional obligation to provide "Brady" material, namely the videotape showing that Plaintiff's vehicle proceeded past Irene's Casino at a continuous rate of speed.

86.    That the Defendant Boruchowitz willfully, recklessly, and with intent to injure the Plaintiff, tainted the probable cause process by giving perjured material testimony.

//

//

87.     That this testimony, that the Plaintiff's vehicle had slowed down, or appeared to slow down, was sponsored by Defendant Kirk Vitto, Esq., who knew, or had reason to know, that the testimony was both material and false.

88.     That after the tainted perjured testimony was wrongfully given and wrongfully sponsored by Defendant Kirk Vitto, Esq., the Plaintiff was bound over for trial.

89.     That prior to the preliminary hearing, the defendant Nye County District Attorney's office violated the Plaintiff's civil rights by not turning over this exculpatory testimony, namely, the video tape.

90.     That when the DNA testing that WAS done was completed, it was 100% exculpatory.

91.     That despite the overwhelmingly exculpatory evidence, the defendant District Attorney's office refused to drop the charges, instead, attempted to evade being sued by offering the Plaintiff a misdemeanor charge.

92.     That it was clear to the Nye County District Attorney's Office that there was not probable cause to prosecute the Plaintiff, that Mr. Vitto as well as the Nye County District Attorney's office maliciously prosecuted the Plaintiff, and are  to the Plaintiff for substantial damages in the millions of dollars.

93.     That the Plaintiff was forced to have several attorneys, due to complicity by NCSO in tampering with the payment process for the Plaintiff's court appointed attorneys, since Defendant Boruchowitz was president of the union, and a clear target for a civil rights lawsuit.

//

94.     That the undersigned was originally retained by the union to represent the Plaintiff in the criminal action, but he was forced to switch different appointed counsel because the union, influenced by Boruchowitz and Travis Huggins (both defendants in this action), tortiously interfered with the Plaintiff's 6th amendment right to effective counsel.

95.     That a Defendant has a constitutional Due Process right to Effective Assistance of Counsel, free from unreasonable interference from outside parties and agencies, including the Defendant David Boruchowitz and Sergeant Huggins, the husband of Mary Huggins, who were both president of the Police Union during the time that the Plaintiff's case progressed through the criminal courts.

96.     That as president of the unions, these individuals would have an active and substantial role in the selection of Mr. Taylor's attorney.

97.     That the defendants SGT. HUGGINS and BORUCHOWITZ, tortiously and willfully, with intent to violate the Plaintiff's rights  by selecting different attorneys for the plaintiff, forcing the plaintiff to be deprived of his right to continuity of counsel in this most important matter.  That despite the fact that this case lingered in the system for over three and a half years, he never had counsel last more than a year.

98.     That this conduct was clearly calculated to unconstitutionally and unfairly disrupt and undermine the sanctity and solemnity of the attorney-client relationship.

99.     That the continual changing of attorneys subjected the plaintiff to extreme emotional distress.

100.     That the actions of these two defendants, and anyone else involved in the attorney-selection process are inexcusable, and actual and punitive damages should be awarded to the Plaintiff.

101.    That the Defendants wilfully, maliciously, and tortiously interfered with the Plaintiff's attorney-client relationship.

102.    That after unreasonable delays, the inevitable occurred, the Plaintiff finally had his day in court, when a jury trial was held in November 2011.

103.    That during the trial, the Defendant Boruchowitz committed perjury, by among other things, stating to the jury that the Plaintiff's vehicle had appeared to slow down as it passed Irene's casino.

104.    That this testimony was known to be false, and Defendant Boruchowitz further committed perjury when he falsely claimed that he could not get the video tape, which he had represented showed the Plaintiff's vehicle appearing to slow down, to play for the jury.

105.    That the District Court was not buying this excuse, and in order to protect and honor the Plaintiff's civil rights, ordered Defendant Boruchowitz to get the tape to play for the jury.

106.    That upon playing the video tape, the jury was literally bewildered that Defendant Boruchowitz could commit such blatant perjury; one juror held up their hands in amazement and disgust.

107.    That during the trial, the Defendant Boruchowitz summed up his intentional and reckless disregard for the Plaintiff's civil rights by stating that his job was not to collect evidence that would establish the Plaintiff's innocence, but only to collect evidence to "prove Mr. Taylor guilty."

//

//

108.    That the ploy did not succeed, the jury, after deliberating less than 30 minutes, cleared Mr. Taylor of all charges, the juror had tears in their eyes and lined up to shake Mr. Taylor's hand.

109.    That the Defendants, individually and jointly, named and unnamed, have violated the Plaintiff's civil rights, and are liable to the Plaintiff for substantial damages, more particularly described below.

## FIRST CLAIM FOR RELIEF
### Violation of 42 USC 1983-Due Process-All Defendants

110.    Plaintiff repeats and realleges the prior paragraphs as if fully set out therein.

111.    That Defendant Boruchowitz, in order to falsely corroborate Ms. Knight's allegations, fabricated a story that the Plaintiff's car appeared to be slowing down in front of Irene's Casino, knowing full well that the video tape he obtained showed that the Plaintiff's vehicle traveled at a normal rate of speed.

112.    That due to defendant Boruchowitz's omissions and fabrications, the Defendant Vitto was misled and thus was unable to exercise his own independent professional judgment in deciding whether or not to prosecute, and therefore are liable to the plaintiff for damages, including but not limited to bond premiums and attorney's fees.

113.    That the Defendants Boruchowitz, Vitto, acting within the scope and respective duties, and others known and unknown, wrongfully obtained probable cause at the preliminary hearing by assembling false statements, misrepresenting evidence, and attempting to concealing exculpatory information from the Plaintiff, in violation of procedural due process.

114.    That the Defendants Boruchowitz, and others, known and unknown attempted to secure the Plaintiff's conviction by assembling false statements, misrepresenting evidence, and attempting to concealing exculpatory information from the jury, infringing on his right to a fair trial, in violation of procedural and substantive due process.

115.    That the Defendants Boruchowitz and Ltnt. Huggins, as officers of the union which is responsible for the selection of counsel for the plaintiff, used their influence to withhold payment to the undersigned, who was aggressively and successfully defending the plaintiff, and kept selecting different attorneys for the plaintiff.

116.    That this conduct willfully and deliberately interfered with the Plaintiff's Due Process rights to continuity of counsel.

117.    That the defendant Kirk Vitto, after the case had progressed past the preliminary hearing level, came into materially exculpatory evidence, including but not limited to the DNA test results, which made Ms. Knight's story implausible and impossible.

118.    That as a trained prosecutor, he knew that there was not probable cause to prosecute the Plaintiff, that no reasonable prosecutor, sworn to seek justice, would have instituted or continued prosecution of these charges.

119.    That despite knowing that the DNA testing that WAS given mortally refuted the state's case, and despite knowing that Ms. Knight was not credible, Mr. Vitto delayed the case for years and caused the Plaintiff to go to trial, backing out at the last minute for someone else, a "special prosecutor," to try the case.

//

120.     That Mr. Vitto, acting within the scope of his duties as a member of the Nye County District Attorney's office was not exercising his independent professional judgment, consistent with his duties to seek justice, but instead was more concerned with the possibility of civil rights litigation than seeking justice and the defendants Vitto, Beckett are liable to the Plaintiff for substantial damages.

121.     That Mr. Vitto, acting in the scope of his duties as a member of the Nye County District Attorney's office, allowed misrepresentations, omissions and fabricated evidence to be given to the prosecutor, in order that prosecution would not be terminated.

122.     That the conduct of Mr. Vitto, Defendant Boruchowitz, and other defendants, known and unknown, prevented the special prosecutor from being able to exercise HIS own independent professional judgment.

123.     That the failure to properly investigate this case by among other things, not obtaining a DNA swab from the  Ms. Knight, in violation of  well established policies and procedures, and by using false statements to wrongfully charge the Plaintiff, the Defendant  in violation of the Plaintiff's due process rights to a reasonable and fair investigation.

124.     That consistent with his expressed testimony, Defendant Boruchowitz perceived his task as getting a conviction, thus manifesting his willful and wanton intentions to violate the Plaintiff's procedural and substantive due process rights.

125.     That his expressed testimony is corroborated by his fabrication of evidence and his attempts to obstruct justice by falsely stating to the jury that the video tape in question could not be played, while at the same time  falsely representing to the jury that the tape showed the Plaintiff's vehicle appearing to be slowing down.

126.     That the investigation itself violated established policy of collecting DNA samples from areas where a complainant states that there was penetration.

127.     That the investigation and arrest of the Plaintiff was in violation of clearly established investigative policy, and in further violation of the Plaintiff's civil rights.

128.     That this described conduct violated the Plaintiff's substantive and procedural Due Process rights.

129.     That the wrong and unlawful acts of the defendants were willful, oppressive, and malicious and with wanton disregard for the established rights of the Plaintiff.

### SECOND CLAIM FOR RELIEF
### Malicious prosecution under 42 USC 1983

130.     Plaintiff realleges the prior paragraphs as if fully set out therein.

131.     That the   elements of malicious prosecution, arising from termination of the criminal prosecution, are (1) want of probable cause, (2) malice, (3) termination of litigation, and (4) damages.

132.     That the Defendant Boruchowitz possesses a propensity to   recklessly, prematurely, and without true probable cause initiate arrests of law enforcement and other public servants of sexually related charges.

133.     That as proof of this continuing and curious common scheme and animus, he caused the Plaintiff to be arrested and required to post a clearly excessive bail, with the specific intent to violate the plaintiff's rights, here by the omission of material evidence and of the fabrication of evidence, and other bad faith tactics.

134.     That as further corroboration, Defendant Boruchowitz, NCSO, and the Nye County District Attorney's office caused William Tidmarsh to be prematurely arrested for a sex related offense, when DNA testing performed on the complainant's clothing absolutely exonerated him, said charges being dismissed after languishing in the system for several years, causing substantial harm and prejudice to Tidmarsh, in violation of his civil rights. William Tidmarsh was also forced to pay a clearly excessive bail.

135.     That as further corroboration, former firefighter Alan Bigelow was falsely charged by Defendant Boruchowitz for sexual assault, and those charges were dismissed.

136.     That the Plaintiff's prosecution, including the arrest, probable cause finding, and trial was  induced by fraud, corruption, perjury, fabricated evidence, or other wrongful conduct undertaken in bad faith, in violation of the Plaintiff's 4th 5th, 6th, and 14th amendment rights.  That not only was there fraud, perjury, fabricated evidence, or other wrongful conduct undertaken in bad faith, but also there was not probable cause to charge the Plaintiff, much less continue prosecution, when minimal further investigation would have exonerated him. The DNA results exonerated the Plaintiff, made the complainant's story impossible, and a routing and policy test of the complainant's vaginal area would have further exonerated him.

137.     That the prosecution was baseless, instituted with unconstitutionally tainted probable cause, and the proceedings were clearly terminated in his favor, as the Plaintiff was acquitted in less than 30 minutes by a jury of his peers.

138.     That Defendant Boruchowitz and other NCSO officers and personnel, known and unknown, Mr. Vitto, Mr. Beckett, acting in his capacity as District Attorney for Nye County, maliciously prosecuted the Plaintiff by pressuring the prosecution, in

violation of the Plaintiff's due process rights.as hereby specifically included and incorporated as though fully set forth herein.

### THIRD CLAIM FOR RELIEF
### Violation Of Civil Rights- 42 USC Sec. 1983-NCSO,  Boruchowitz, Huggins, Howard, Marshall

139.     Plaintiff repeats and realleges the prior allegations as if fully set out therein.

140.     That at all times material herein, Defendant County promulgated, promoted and pursued policies, practices and/or customs which resulted in the disparate treatment of similarly-situated individuals, as alleged herein, in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983. Plaintiff is informed and believes and thereon alleges that Defendant County's discriminatory treatment of the plaintiff, in contrast to similarly situated sexual assault suspects, as alleged herein, did not serve a legitimate penological purpose.

141.     That the Plaintiff was entitled to a reasonable and fair criminal investigation.

142.     That in the investigation of the plaintiff, the defendants Boruchowitz, Huggins,  and others, known and unknown willfully and recklessly violated the plaintiff's due process rights by conducting a constitutionally inadequate, unreasonable investigation, by fabricating evidence, by willfully ignored evidence that suggested the plaintiff's innocence, by violating clearly established policy and procedures that mandate swabbing of alleged victims of sexual assault, and by systematically applying undue pressure to implicate the plaintiff in the face of substantial exculpatory evidence, by recognizing deficiencies in their case and manufactured false evidence including but not limited to

falsely testifying that the Plaintiff's vehicle appeared to slow down  and falsely claiming that the video would not function correctly in order that it may be presented to the jury.

143.     That these Defendants, under color of law, deprived Plaintiff of his rights provided by the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.

144.     That by reason of the aforesaid actions, Plaintiff was arrested, incarcerated, and charged with crimes he did not commit. As a result, Plaintiff sustained severe emotional, psychological, and physical injuries, mental pain and suffering, and emotional distress, all of which said conditions may be permanent or disabling in nature.

145.     These acts and others committed by the Defendants deprived Plaintiff of rights secured to him by the Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution and were committed by each of the Defendants knowingly, willfully, and maliciously with the intent to harm, injure, vex, harass, and oppress Plaintiff. As a result, Plaintiff should be awarded punitive and exemplary damages from Defendants, and each of them, in excess of the jurisdiction of this court.

### FOURTH CLAIM FOR RELIEF
### False Arrest

146.     Plaintiff realleges the prior paragraphs as if fully set out therein.

147.     That the defendant BORUCHOWITZ and other DOE POLICE OFFICERS gave statements which falsely accused Plaintiff of serious charges. These statements were given with the intent that Plaintiff would be arrested, charged, and incarcerated pursuant to Defendant's statements.

//

148.     Plaintiff's arrest was illegal and void in that the declarations and statements made by Defendants BORUCHOWITZ and OTHER DOE POLICE OFFICERS were false, misleading, lacking in probable cause and propounded solely to have Plaintiff wrongly arrested.

149.     That by reason of the foregoing, Plaintiff was deprived of his liberty, was subjected to scorn, ridicule, and humiliation by those knowing of his arrest, and prevented him attending to his employment during the period of his respective arrest and incarceration.

150.     The aforementioned acts in effectuating the arrest against Plaintiff were unreasonable and constituted a false arrest.

151.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff suffered damages and is entitled to compensation for his pain and suffering, lost earnings, lost earning capacity, and other related costs including but not limited to attorney fees, in excess of the jurisdictional minimums of this court.

152.     That the acts, conduct, and behavior of Defendants BORUCHOWITZ, HUGINGS POLICE OFFICER DOES   were performed knowingly, intentionally, oppressively, and maliciously by reason of which Plaintiff is entitled to punitive damages.

### FIFTH CLAIM FOR RELIEF
### Intentional Infliction of Emotional Distress

153.     That Plaintiff repeats the prior paragraphs as if fully set out therein.

154.     That at all times material and relevant, the Defendants   were acting within the scope of their authority as agents and officers of defendant NCSO and NYE COUNTY DISTRICT ATTORNEY"S OFFICE.

//

155.     That to sustain a claim for intentional infliction of emotional distress, the following elements must exist: (1) the conduct involved must be extreme and outrageous; (2) the actor must either intend that his conduct inflict severe emotional distress or know that there is at least a high probability that his conduct will cause severe emotional distress; and (3) the conduct must in fact cause severe emotional distress.

156.     That by their acts and omissions, the Defendants and each of them intentionally inflicted emotional distress on Plaintiff, as described above.

157.     That the conduct of the Defendants described above has caused the Plaintiff to endure humiliation, anxiety, embarrassment and severe emotional distress.

158.     That this conduct That this conduct was extreme and outrageous, and exceeds all possible bounds of decency and which would arouse resentment against the actors and lead to an exclamation of "outrageous" by an average member of the community.

159.     That the Defendants knew, intended, should have known, or known that there is a high probability that this conduct would cause severe emotional distress.

160.     That this conduct is so extreme that no reasonable person can be expected to endure it.

161.     That the Defendants' That the Defendants' actions are without just cause in a civilized society.

162.     That the Defendants are liable to the Plaintiff for compensable as well as punitive damages.

163.     That the Plaintiff is entitled to reasonable attorney's fees.

//

## SIXTH CLAIM FOR RELIEF
## Civl Conspiracy - all Defendants

164.    Plaintiff realleges the prior paragraphs as if fully set out therein.

165.    That at all material and relevant herein, Defendants were acting within the scope of their authority as agents and officers of defendant NCSO and NYE COUNTY DISTRICT ATTORNEY'S OFFICE.

166.    That at all times material and relevant herein, the Defendants were acting in concert with each other.

167.    That the Defendants, known and unknown,  combined, conspired, confederated, and agreed together and with each other to knowingly and willfully engage in the following acts, among others to cause harm to Plaintiff:

a) To violate Plaintiff's civil rights;

b) to maliciously prosecute Plaintiff;

c) to falsely arrest Plaintiff;

d) to falsely imprison Plaintiff and

e) to intentionally inflict emotional distress on Plaintiff.

168.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff suffered damages and is entitled to compensation for his pain and suffering, lost earnings, medical expenses, and other related costs including but not limited to attorney fees.

169.    The conduct of the Defendants and each of them individually and in concert with one another as herein alleged was willful, intentional, oppressive, malicious, and done in a wanton and reckless disregard of Plaintiff's rights and thereby warrant the imposition of substantial punitive damages in the millions of dollars.

## SEVENTH CLAIM FOR RELIEF
## Negligent Hiring, Supervision, and Retention

170.    Plaintiff repeats the prior allegations as if fully set out therein.

171.    These Defendants had a duty to exercise reasonable care in the hiring, training, supervision, and control over those officers and employees involved in Plaintiff's improper seizure and detention.

172.    That the Defendant NCSO knew that Detective Boruchowitz had a penchant for brining false charges against individuals, especially those in a law enforcement capacity.

173.    These Defendant NCSO breached the duties delineated in paragraph 164.

174.    That as a direct and proximate result of Defendants' conduct as described herein, Plaintiff experienced damages and is entitled to compensation for his pain and suffering, lost earnings, medical expenses, and other related costs including but not limited to attorney fees

175.    The conduct of the Defendants and each of them individually and in concert with one another as herein alleged was done in a reckless disregard of Plaintiff's rights and thereby warrant the imposition of punitive damages in the millions of dollars.

## EIGHT CLAIM FOR RELIEF
## Wrongful Termination and Unjust Enrichment-NCSO and NYE COUNTY

176.    Plaintiff repeats and realleges the prior paragraphs as if fully set out herein.

177.    That the Plaintiff had retained evidence in a criminal case at his residence, all tagged, with no chain of custody issues.

178.     That members of NCSO routinely took evidence home with them, so long as the chain of custody was not affected.

179.     That in this instance, the Plaintiff was confronted with the choice of resigning or being terminated, even though similarly situated individuals had not been subject to this Hobson choice.

180.     That the Plaintiff was days from vesting, and had more than sufficient accrued time to cover the amount of days required to vest.

181.     That the Plaintiff was not allowed to vest, and was maliciously and wrongfully denied his pension.

182.     That this infraction has not been applied in this form and fashion to similarly situated individuals, and has never been applied to officers of Nye County who are not of African-American descent.

183.     That as a result of the wrongful termination, the Plaintiff has been damaged in an amount to be established at trial.

184.     That by not paying the pension, NYE COUNTY and/ or NCSO has been unjustly enriched.

185.     That the refusal to pay his pension constitutes an unjust enrichment, and the County of Nye and/or NCSO is liable to the Plaintiff.

## **RIGHT TO AMEND**

186.     Plaintiff reserves his right to amend this complaint and add additional defendants and causes of action that relate back to this original complaint as discovery proceeds.

WHEREFORE, Plaintiff prays for relief as follows:

1. For compensatory and special damages;

2. For punitive damages;

3. For costs and attorney fees incurred in prosecuting this action; and

4. For such further relief as the Court deems warranted.

Dated this ___ day of November, 2013

/s/ C. Conrad Claus, Esq.
C. CONRAD CLAUS, ESQ.
THE LAW OFFICES OF C. CONRAD
CLAUS
Nevada Bar No. 6601
816 E. Ogden Ave.
Las Vegas, NV 89101
(702) 384-4927 Phone
(702) 385-4927 Fax
Attorney for Petitioner